# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 2:12 CR 10** |
| | ) | |
| **JOSEPH B. MILLER** | ) | |

## OPINION and ORDER

Petitioner Joseph Miller has filed a motion (DE # 144) to vacate his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Miller's motion will be denied.

## I.    BACKGROUND

The following factual and procedural history is adopted from the Seventh Circuit's opinion on Miller's direct appeal.

> On December 13, 2011, a clean-cut male in his late 30s or early 40s robbed the Standard Bank & Trust in Hammond, Indiana. The robber wore a thigh-length leather coat, black sneakers with red stitching, and a green-and-white baseball cap with a Chicago Bulls logo. He approached bank teller Judith Tauber, who was standing next to her supervisor Pakama Hoffman, and handed Tauber a note demanding money. Tauber quickly turned over some $5,000 in cash. The robber then exited the bank and headed in the direction of Amtech Technology Systems, a nearby business. He climbed into a blue Ford Explorer with Illinois plates and drove off. The vehicle was captured on Amtech surveillance video.
>
> FBI Agent Michael Peasley reviewed the surveillance footage but, after attempting to sharpen the image, could not identify the Explorer's license plate number. He sent the video footage to the Lake County High Intensity Drug Trafficking Area ("HIDTA") Task Force, where the image was refined so that all but one digit on the license plate became legible. Using the enhanced image, Agent Peasley searched the Illinois vehicle registration database and entered each of the ten possible license plate combinations. One of those combinations matched the plate number of a Ford Explorer registered to defendant-appellant Joseph Miller, who lived a few miles outside of Hammond, in Lansing, Illinois.

The FBI conducted surveillance of Miller for several days. Agent Peasley observed Miller's Ford Explorer parked outside of his home and, based on the vehicle's distinctive characteristics, including stickers, rain dams, and window tinting, Agent Peasley concluded that Miller's Explorer was the same vehicle captured on the Amtech video. During the surveillance period, Miller and his girlfriend, Debra Loggins, were the only individuals seen driving the vehicle. On January 5, 2012, agents searched Miller's home with Loggins's consent and recovered a black leather jacket resembling that worn by the bank robber. The agents also seized Miller's black sneakers, which featured red stitching and distinctive tabs that matched the embellishments on the robber's sneakers. They did not locate any cash or a Chicago Bulls hat, though Loggins's daughter stated that Miller and Loggins owned matching green-and-white Chicago Bulls baseball caps.

That same day, Agent Peasley questioned Miller at the Lansing, Illinois police station, where he advised Miller of his Miranda rights. Miller initially denied involvement in the robbery, though when Agent Peasley showed him a photo of the robber and the Ford Explorer in the Amtech parking lot, Miller responded, "That's my vehicle, but that's not me." Forty-five minutes into the interview, however, Agent Peasley asked Miller if he had a firearm, to which Miller replied, "I did not have a gun." Understanding this to mean that Miller was admitting to the robbery, Agent Peasley clarified, "You mean you didn't have a gun during the robbery," to which Miller replied, "Yes." Miller also explained that, following the robbery, he had thrown the Chicago Bulls cap into a nearby dumpster. This conversation was not recorded, and Miller did not sign a written confession.

Early in the investigation, Agent Peasley provided photo arrays to both Tauber and Hoffman, the Standard Bank witnesses. Hoffman pointed at Miller's picture in the array but stated that she could not be 100% certain that he was the robber. Tauber pointed to Miller's photo and recalled that she had thought the bank robber resembled a courier who she had previously seen at the bank. Miller's photo, she explained, reminded her of that same courier. In support of the criminal complaint against Miller, Agent Peasley submitted an affidavit recounting the photo line-up with Tauber. The affidavit reads, in pertinent part:

> [When] law enforcement showed a photo lineup containing
> a photo of Miller and five other subjects to [Tauber,] [s]he
> pointed to the photo of Miller and said, "He looks familiar to

me." [Tauber] explained that when she was being robbed,
she thought the man reminded her of a courier who comes
into the bank. When she saw the photo of Miller, she again
thought the photo reminded her of the courier.

Tauber later reviewed Agent Peasley's affidavit and disagreed with its
characterization of her statements. She clarified that the photograph of
Miller "looked familiar, because it reminded her of the courier, not
because the photograph looked like the bank robber." When Miller
learned of this discrepancy, he moved to depose Tauber prior to trial. The
district court denied Miller's motion after the government explained that
it "expect[ed] [Tauber's] trial testimony to be—that she did not identify
the photograph as the bank robber." Tauber, in fact, died shortly
thereafter and no evidence relating to her observations upon viewing the
photo array was introduced at trial.

At Miller's June 2013 trial, video footage from both Standard Bank and the
Amtech parking lot was admitted. Hoffman testified as the sole
eyewitness. Although she had been unable to pick Miller out of the photo
array, Hoffman made an in-court identification of Miller as the robber at
trial. Miller's attorney, Adam Tavitas, did not object to the admission of
Hoffman's identification. However, on cross-examination, Tavitas
emphasized that Hoffman had observed the robber only briefly and had
been unable to identify Miller in the photo array presented to her shortly
after the robbery. Loggins's daughter also testified at trial, identifying the
robber's green-and-white baseball cap as a hat identical to one Miller had
owned. Loggins herself denied previously seeing Miller with a
green-and-white Bulls hat. She also denied several prior statements she
had made to law enforcement, but admitted telling agents that Miller was
the individual in the Amtech surveillance footage. When again confronted
with the footage during trial, Loggins stated that she was unable to
identify the person depicted. However, Loggins did positively identify the
car in the image as Miller's Ford Explorer.

Agent Peasley also testified at trial, and described the circumstances
surrounding Miller's confession and other details relating to the
investigation. When questioned about his identification of Miller's vehicle,
Agent Peasley explained that he reviewed the Amtech surveillance tape
and was eventually able to read all of the digits on the vehicle's license
plate, with the exception of one number. Agent Peasley's testimony
continued as follows:

Q. And did you do anything to enhance your ability to read th[e license plate]?

A. We played with the video quite a lot. We looked at could we adjust the colors, even invert the colors, do anything we can to bring out those numbers. And we continued to do that and then got to the point where we were able to read all but that one digit. So we then started playing with those digits in the registration system database to look and see if we could find a match.

Q. All right. And let me just have you explain something you just said. You said you were playing with the video. Did you make any changes or enhancements—

A. No.

Through Agent Peasley, the government also admitted various financial records. Records from Miller's electric company confirmed that his bill had been delinquent prior to the robbery but was paid the day after the robbery. Bank account records revealed that Miller's account was overdrawn by $159.82 on the morning of the robbery and that two cash deposits totaling $370 were made into his account later that same day. Agent Peasley testified, however, that Miller's account was "delinquent by about 730 something dollars [on the morning of] the bank robbery." The government referenced this $730 figure during its closing argument.

Tavitas cross-examined Agent Peasley on several issues. He emphasized that Agent Peasley did not record the interview in which Miller purportedly confessed, and pointed out other shortcomings in the investigation, including that no handwriting exemplar was obtained from Miller, no fingerprints or DNA were recovered from the scene, and no stash of money was found at Miller's house. Tavitas did not question Agent Peasley about Tauber's statements in relation to the photo array, nor did he attempt to correct Agent Peasley's testimony regarding the amount by which Miller's account was overdrawn. Ultimately, Miller was found guilty of bank robbery in violation of 18 U.S.C. § 2113(a), and sentenced to 225 months' imprisonment.

Represented by new counsel, Miller filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. He argued that Tavitas provided constitutionally ineffective assistance, first, because he

did not introduce evidence that Agent Peasley's affidavit "mischaracterized" Tauber as having identified Miller as the robber; second, because he did not object to Agent Peasley's testimony regarding the enhancement of the license plate images; and third, because Tavitas did not challenge Agent Peasley's incorrect assertion that Miller's bank account was more than $700 overdrawn on the day of the robbery.

At an evidentiary hearing, Agent Peasley testified that he had sent the Amtech video to HIDTA staff who "took a look at the video to try to clear it up to see if we could see what the [license plate] tag was." He also attempted to clarify the image on his own but was unsuccessful. Agent Peasley admitted he could not recall exactly how the video was sent to HIDTA, who adjusted its sharpness, or what techniques were used to do so. He believed HIDTA "simply adjusted aspects of the image, so—like, they adjusted the color ration [sic]. They adjusted the zoom level. They adjusted sharpness of the photos." However, he insisted that HIDTA "did not change the photograph." Agent Peasley also admitted that he erred in testifying that Miller's bank account was overdrawn by approximately $730 on the day of the robbery. He explained that he had mistakenly conflated the relevant pre-robbery account balance (-$159.82) with Miller's account balance a few weeks after the robbery (-$713).

Tavitas also testified at the hearing regarding his representation of Miller. He explained that he did not question Agent Peasley about Tauber's statements because he did not want to introduce evidence that might allow the jury to infer that Tauber thought Miller resembled the robber. Tavitas also stated that it was not part of his trial strategy to challenge the assertion that the car in the Amtech lot belonged to Miller, as Miller and Loggins had both admitted to Agent Peasley that the car in the Amtech lot was his. Rather, Tavitas's trial strategy was to argue that the car was Miller's, but that the man in the video was someone else. Tavitas therefore saw no need to cross-examine Agent Peasley regarding the process by which he verified the robber's license plate number. Tavitas could not explain his failure to correct Agent Peasley's misstatement with respect to Miller's bank records.

The district court denied Miller's new trial motion. First, it found no ineffectiveness relating to Tavitas's choice not to cross-examine Agent Peasley about Tauber's pre-trial statements, concluding that Tavitas had made a "sound tactical decision." The court also concluded that Tavitas acted permissibly in declining to question Agent Peasley about the license plate enhancement process as Tavitas had explained that he did not intend

to argue at trial that the vehicle on the scene did not belong to Miller. Finally, the district court assumed that Tavitas's failure to correct Agent Peasley's testimony regarding Miller's bank account balance was error but that, considering the strength of the government's case, it did not prejudice Miller.

*United States v. Miller*, 795 F.3d 619, 622–25 (7th Cir. 2015).

Miller, through his appellate counsel, then pursued these claims on a direct appeal. *See id.* On appeal, Miller argued that he was entitled to a new trial because Agent Peasley offered false testimony during trial regarding: (1) his involvement in clarifying the surveillance footage to obtain the license plate number; and (2) the amount by which Miller's bank account was overdrawn on the morning of the robbery. Miller also argued that he was entitled to a new trial because his trial counsel provided constitutionally ineffective assistance by: (1) failing to seek the suppression of Hoffman's in-court identification of Miller as the robber; (2) failing to cross examine Peasley about Tauber's clarification of statements she made while examining the photo array; and (3) failing to correct Peasley's statement about Miller's account deficit on the morning of the robbery. *Id.* at 627-28.

The Seventh Circuit affirmed this court's denial of Miller's motion for a new trial. The Court specifically found that Peasley's statements did not effect the jury's verdict. The Court also held that Miller's trial counsel did not provide constitutionally inadequate representation. The Court held that trial counsel's decision not to object to Hoffman's in-court identification did not fall below an objective standard of reasonable attorney performance. *Id.* at 629. Second, the Court found that trial counsel's decision

not to cross examine Peasley using the statements Tauber made while viewing the photo array was a legitimate trial strategy. *Id.* at 629-30. Finally, the Court held that trial counsel's failure to correct Peasley's misstatement regarding Miller's bank account did not prejudice Miller. *Id.* at 630.

Miller now moves to vacate his conviction pursuant to 28 U.S.C. § 2255. Miller's motion, supplemented several times and containing hundreds of pages of argument, identifies 10 claims (Claims A-J)[1] which he believes entitle him to relief. Miller's claims can be categorized as claims of: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) challenges to the Government's evidence; and (4) challenges to the conditions of his supervised release.

## II.   LEGAL STANDARD

A § 2255 motion allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. 28 U.S.C. § 2255(a). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

A § 2255 motion is not a substitute for a direct appeal, nor is it a means by which a petitioner may appeal his claims for a second time. *Varela v. United States*, 481 F.3d

---

[1] Miller's original motion also included claims K-M. However, in his reply brief, Miller clarifies that he no longer wishes to pursue these claims. (DE # 176 at 2.)

932, 935 (7th Cir. 2007). A petitioner cannot raise constitutional claims (other than

ineffective assistance of counsel) in a § 2255 motion that he could have, but did not,

raise in a direct appeal unless: (1) he shows good cause for, and actual prejudice from,

his failure to raise the claims on appeal; or (2) failure to consider the claim would result

in a fundamental miscarriage of justice, such as when a petitioner is actually innocent of

the crime. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017); *Fountain v. United

States*, 211 F.3d 429, 433 (7th Cir. 2000). "Cause for a default is ordinarily established by

showing that some type of external impediment prevented the petitioner from

presenting his federal claim [on direct appeal]. Prejudice is established by showing that

the violation of the petitioner's federal rights worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis v.

Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (internal citations and quotation marks

omitted). A petitioner cannot raise nonconstitutional issues in a § 2255 motion that he

failed to raise on direct appeal, regardless of cause and prejudice. *Sandoval v. United

States*, 574 F.3d 847, 850 (7th Cir. 2009); *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir.

2000).

## III.    DISCUSSION

### A.    *Procedurally Barred Claims*

Miller's motion to vacate contains a number of procedurally barred claims. He

may not obtain relief on these claims.

First, some of Miller's claims were raised on direct appeal. For example, on

appeal Miller argued that trial counsel should have impeached the credibility of Hoffman's identification of him as the robber. *Miller*, 795 F.3d at 629-30. This claim is procedurally barred. Miller is not permitted to re-litigate any claim that the Seventh Circuit has already considered. *See Varela*, 481 F.3d at 935; *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).

Similarly, Miller's claims that he received ineffective assistance of trial counsel are also barred. An ineffective assistance of counsel claim may typically only be raised once. *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) ("[I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief."). On appeal, Miller argued that he received ineffective assistance of trial counsel. *Miller*, 795 F.3d 627. In its opinion, the Seventh Circuit noted that because Miller raised the issue on direct appeal, he would not be permitted to pursue an ineffective assistance of trial counsel claim again in any collateral attack. *Id.* at n. 5. Miller attempts to circumvent this procedural bar by arguing that appellate counsel provided ineffective assistance by failing to warn Miller of the consequence of raising the issue on direct appeal, and/or failing to raise additional issues regarding trial counsel's performance. As discussed in a different section of this opinion, those arguments are not pursuasive.

Miller also presents a number of claims in his present motion that he did not raise during his direct appeal, and therefore these claims are procedurally defaulted. *See*

*McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). It is possible for a petitioner to overcome his procedural default of constitutional issues if he can demonstrate either: (1) cause and prejudice; or (2) actual innocence. *Delatorre*, 847 F.3d at 843. However, Miller makes no argument for actual innocence. Furthermore, while cause may be demonstrated where a petitioner has established ineffective assistance of counsel, *see Veytia-Bravo v. United States*, 972 F.2d 352 (7th Cir. 1992), Miller has not established ineffective assistance of appellate counsel, as discussed below.

B.     *Ineffective Assistance of Appellate Counsel*

Miller identifies several reasons why he believes appellate counsel provided constitutionally ineffective assistance. Construing Miller's *pro se* § 2255 motion and filings liberally, *see Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017), none of the reasons he identifies is sufficient for this court to grant his motion to vacate.

Claims that appellate counsel was ineffective are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Under *Strickland*, "a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

"To satisfy the deficient performance prong, a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness." *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as

possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (internal citation omitted).

To satisfy the prejudice prong, a petitioner must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Strickland*, 466 U.S. at 694. "This does not mean that the defendant must show that counsel's deficient conduct more likely than not altered the outcome in the case. Rather, a reasonable probability is a probability sufficient to undermine confidence in the outcome, which in turn means a substantial, not just conceivable likelihood of a different result." *Harris v. Thompson*, 698 F.3d 609, 644 (7th Cir. 2012) (internal citations and quotation marks omitted). *See also Canaan v. McBride*, 395 F.3d 376, 386 (7th Cir. 2005) ("Even if the odds that the defendant would have been acquitted had he received effective representation appear to be less than fifty percent, prejudice has been established so long as the chances of acquittal are better than negligible." (internal citation omitted)). "Making this probability determination requires consideration of the totality of the evidence before the judge or jury, and a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Harris*, 698 F.3d at 645 (internal citations and quotation marks omitted).

A petitioner's "failure to establish either element of the *Strickland* framework will result in denial of his claim." *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). If a

petitioner fails to make a proper showing under one of the *Strickland* prongs, the court need not consider the other. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant.").

1. Appellate Counsel was Not Ineffective for Raising Ineffective Assistance of Trial Counsel Claim on Direct Appeal

Miller contends that appellate counsel was ineffective because he raised a claim of ineffective assistance of trial counsel on direct appeal – precluding Miller from pursuing this claim on a motion to vacate, where the record could be more fully developed. Miller is correct that it is typically advisable to wait to pursue such a claim until a collateral attack pursuant to § 2255, as such claims are typically "unlikely to succeed without additional evidence showing why trial counsel had acted as he did, and what the adverse consequences of a mistake would have been." *Peoples*, 403 F.3d at 846. However, the Seventh Circuit has noted that an attorney's choice to pursue an ineffective assistance claim on direct appeal may be justified where the district court has already held a hearing on a defendant's motion for a new trial, evidence regarding trial counsel's performance has already entered the record, and the defendant is represented by different counsel on appeal. *Id.* That is precisely what occurred in Miller's case. Thus, Miller has failed to demonstrate that appellate counsel's performance in bringing the claim on direct appeal fell below an objective standard of reasonableness.

Miller contends that he should have been given the choice of whether to pursue this claim on direct appeal or collateral proceeding. (DE # 145 at 22.) However, this

choice was not his to make. "While the accused has the ultimate authority to decide whether to take an appeal, the choice of what specific arguments to make within that appeal belongs to appellate counsel." *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019) (internal citation and quotation marks omitted). Moreover, appellate counsel is under no obligation to present all nonfrivolous arguments requested by his client on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Thus, Miller's appellate counsel was not ineffective for declining to leave this choice to Miller's discretion.

### 2. Miller was Not Prejudiced by Appellate Counsel's Performance

The remainder of Miller's ineffective assistance of appellate counsel claims can be resolved on the prejudice prong of the *Strickland* analysis. Miller argues that appellate counsel failed to raise several additional arguments regarding trial counsel's effectiveness. (DE # 145 at 22.)

To establish prejudice, Miller had to establish that appellate counsel's decision not to raise these additional arguments rendered the proceeding in his direct appeal "fundamentally unfair" and rendered the result of his appeal "unreliable." *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996). "[W]hen [an] omitted issue 'may have resulted in a reversal of the conviction, or an order for a new trial,' we will deem the lack of effective assistance prejudicial. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) (internal citation omitted). When a petitioner argues that his appellate counsel was ineffective for failing to raise particular issues on appeal, the court "ask[s] only whether there is a reasonable probability that raising the issue would have made a difference in the

outcome of the appeal." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) "In other words, performance is about picking the battles; prejudice looks at whether winning the battle would have made a difference in the outcome of the war." *Id.*

Miller has failed to establish prejudice for two reasons. First, the evidence against him was powerful. Appellate counsel's failure to raise the additional arguments Miller identifies did not render Miller's appeal fundamentally unfair or the result unreliable. Second, there is not a reasonable probability that, had appellate counsel raised these additional arguments, the outcome of his appeal would have been different.

### i.     No Prejudice in Light of the Totality of Evidence Against Miller

In light of the strength of the evidence against him, Miller has not established that the outcome of his appeal would have been different had appellate counsel raised additional ineffective assistance claims. In the words of the Seventh Circuit: "the [] evidence of Miller's guilt is powerful: his vehicle was captured on surveillance video near the bank at the time of the robbery; there is video footage of a man with a similar build and similar distinctive clothing entering the vehicle; Peasley testified that Miller confessed to committing the robbery; and, although Hoffman's in-court identification of Miller may not be entitled to much weight . . . it is an additional factor that weighs in favor of the government's case." *Miller*, 795 F.3d at 627. Moreover, at trial, the Government submitted evidence that: Miller's last day at his job was the same day as the robbery (DE # 77 at 8, 26); a coat similar to the one worn by the robber was discovered in a hall closet in Miller's home (DE # 75 at 223); his fiancé s daughter

14

testified that she had seen the same type of distinctive hat worn by the robber, in Miller's bedroom (*Id.* at 188-89); a second FBI officer testified that Miller confessed to wearing the hat on the day of the robbery and later throwing it into a dumpster somewhere on 57th Street in Chicago (DE # 77 at 17); Miller's bank account was overdrawn on the morning of the robbery, but had two cash deposits in the hours after the robbery (*Id.* at 63); Miller's ComEd bill was delinquent the day prior to the robbery, but was paid in full the day after the robbery (*Id.* at 63); and Miller's fiancé testified that the car in the surveillance video was Miller's car (DE # 75 at 211).

The evidence against Miller was powerful. In light of this evidence, Miller has failed to demonstrate a reasonable probability that the result of his appeal would have been different, had appellate counsel raised additional arguments in support of Miller's ineffective assistance of trial counsel claim.

### ii.    Evidence from Tena Miller and Debra Loggins

It is not only the strength of the evidence against Miller that persuades this court that Miller suffered no prejudice on appeal – it is also the weakness of the arguments he believes appellate counsel incorrectly omitted. The first of these omitted issues regards how Miller's trial counsel handled evidence from his mother, Tena Miller, and his fiancé, Debra Loggins. Miller argues that appellate counsel should have argued that trial counsel failed to: (1) seek evidence from these witnesses; (2) move for these witnesses to correct inaccuracies in the investigator's reports; and (3) call these witnesses to testify during trial. (DE # 145 at 30.) According to Miller, had trial counsel

more diligently pursued evidence from these witnesses, his mother and fiancé would have told trial counsel that investigators misrepresented their statements. Miller argues that these witnesses never told investigators that they could identify Miller, or his car, in the surveillance footage, and this evidence could have been used to impeach the credibility of the law enforcement officers who handled his case. (*Id.* at 32.)

Miller's appellate counsel's failure to argue these points did not prejudice Miller. These witnesses testified at trial and Miller's trial counsel cross examined them. These witnesses took advantage of the opportunity to dispute the Government's position that they previously identified Miller in the photographs, and they were able to testify as to what they recall telling investigators. Moreover, Miller's fiancé confirmed at trial that she was able to identify Miller's car as the car in the surveillance footage. Thus, Miller suffered no prejudice when appellate counsel declined to pursue an ineffective assistance of counsel claim on these bases.

### iii.    HIDTA Evidence

A considerable portion of Miller's § 2255 motion is committed to an assortment of challenges to the admissibility of the HIDTA evidence, which clarified the surveillance footage enough to retrieve all but one digit of the license plate number on the getaway car. Miller's present arguments are, in essence, variations on his original argument on appeal that the Government presented false evidence when Peasley testified regarding clarification of the surveillance footage to obtain the license plate number. Miller presently makes arguments regarding: chain of custody, authentication,

admissibility, and fabrication of evidence.

The Seventh Circuit has already found that any false testimony Peasley offered did not prejudice Miller because the license plate identification process was merely a "collateral" matter at trial:

> Because both Miller and Loggins had admitted that the vehicle in the Amtech lot belonged to Miller, the defense did not attempt to challenge that assertion. And, separate and apart from its license plate number, Miller's Ford Explorer possessed certain other distinctive characteristics (e.g., window stickers, a chrome bumper, tinted windows, and rain dams) that enabled Agent Peasley to identify Miller's vehicle as the vehicle present at the scene of the crime. Therefore, Agent Peasley's potentially misleading statements about the license plate identification process were not essential to the factual finding that the getaway car belonged to Miller.

*Miller*, 795 F.3d at 626-27.

Miller has now offered FOIA response documents suggesting that the video was never reviewed by the specific technician that Peasley claimed reviewed the footage. This does not change the fact that, to prevail on his § 2255 motion, Miller must establish prejudice. As the Seventh Circuit has already concluded, the license plate identification process was not essential to a finding that the getaway car belonged to Miller. Moreover, as this court has already discussed, there was ample evidence to support a jury's finding of guilt.

This court's prejudice inquiry, however, does not end with the conclusion that there was enough evidence to convict Miller. To determine prejudice, the court must do more than conduct a sufficiency-of-the-evidence analysis. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The relevant inquiry "is not just a matter of determining whether, after

discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler v. Greene*, 527 U.S. 263, 290 (1999) (quoting *Kyles*, 514 U.S. at 435) (applying the *Brady* materiality standard); *see also Harris v. Thompson*, 698 F.3d 609, 646 (7th Cir. 2012) ("The *Strickland* prejudice and *Brady* materiality standards are identical."). Although prejudice does not turn on a sufficiency-of-the-evidence test, the strength of the government's case is relevant in determining whether "the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012); *see also United States v. Agurs*, 427 U.S. 97, 112 (1976) (defendant was not deprived of a fair trial due to undisclosed evidence where omitted evidence did not create a reasonable doubt that did not otherwise exist).

Cases where undisclosed evidence put the "whole case in such a different light as to undermine confidence in the verdict" are cases in which the favorable evidence not introduced at trial impeached the credibility of the other evidence against the defendant. *Compare Strickler v. Greene*, 527 U.S. 263 (1999) (the State's failure to disclose key eyewitness' prior statement, which would have severely impeached eyewitness' trial testimony or excluded it entirely, did not prejudice capital murder defendant because there was sufficient independent evidence to support conviction and death sentence) *with Harris v. Thompson*, 698 F.3d 609 (7th Cir. 2012) (overwhelming nature of evidence

against defendant was not enough to negate prejudical effect of attorney's failure to secure testimony of six-year-old sole eyewitness where admission of eyewitness' testimony would have placed all other evidence at trial in an entirely different light). *See also Sims v. Hyatte*, 914 F.3d 1078, 1089 (7th Cir. 2019) (comparing cases).

Here, in the context of *Strickland* prejudice, Miller has suffered no prejudice because the other evidence against him was so strong that it is able to sustain confidence in the verdict, even if it is true that Peasley lied when he claimed that HIDTA was able to clarify the surveillance footage.[2] This fabrication could not reasonably be taken to "put the whole case in such a different light as to undermine confidence in the verdict." There is powerful evidence against Miller, independent of any fabrication from Peasley: the car in the surveillance footage had the same distinctive characteristics as Miller's car; Miller's fiancé (who was in possession of the car while Miller was incarcerated) testified that the car in the surveillance video was Miller's; Miller's fiancé's daughter testified that Miller owned the same, distinctive green-checkered Bulls hat worn by the robber; Miller was the same height and build of the robber; a coat similar to the one worn by the robber was discovered in a hall closet in Miller's home; Miller owned shoes similar to those worn by the robber; Miller's bank

---

[2] The fact that Miller claims that Peasley fabricated this evidence does not automatically render his trial unfair. "A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]" *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal citation and quotation marks omitted). For the reasons articulated in this section and throughout this opinion, there is not a reasonable likelihood that a fabrication regarding the license plate identification process effected the judgment of the jury.

account was overdrawn the morning of the robbery and had two cash deposits in the hours after the robbery; Miller's overdue electric bill was paid the day after the robbery; and the day of the robbery was the last day Miller showed up for work. None of this evidence would be placed in a different light, even if Peasley had fabricated the HIDTA evidence. And, as already discussed, the HIDTA evidence was not necessary to the factual finding that the getaway car was Miller's car. Thus, there is not a reasonable probability that the outcome of Miller's appeal would have been different, had counsel raised these issues on appeal.

Miller makes two additional arguments that are related to his challenges to the HIDTA evidence. First, he argues that appellate counsel should have argued that trial counsel's theory of the case, which conceded that Miller's car was the getaway car, amount to ineffective assistance. For the reasons already articulated, appellate counsel's failure to raise this issue did not prejudice Miller. There was sufficient independent evidence that the car belonged to Miller, such that this alleged failure does not undermine confidence in the Circuit court's finding that Miller's trial counsel was not constitutionally ineffective.

Miller also claims that the Government improperly failed to disclose certain FBI reports, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). (DE # 145 at 45.) Miller argues that, according to FBI policy, there should have been reports created that documented the storage, chain of custody, and testing of the surveillance video, and this policy is evidence that these reports *were* created, but were not disclosed. Miller contends that his

appellate counsel should have raised a *Brady* claim on appeal and/or should have raised an ineffective assistance claim with regard to trial counsel's failure to discover and raise this issue at trial. Here, again, Miller's argument is an attempt to challenge the admission of the HIDTA evidence. For the reasons already articulated, Miller was not prejudiced by appellate counsel's failure to raise this issue on appeal.

### iv.    Miller's Confession

Miller argues that he never made the confession that Peasley claims he did, and therefore appellate counsel should have argued that trial counsel was ineffective for failing to have Miller testify at the detention hearing, grand jury proceedings, and for failing to move to have Peasley amend his statement that Miller confessed. None of these alleged failures prejudiced Miller. Miller had the opportunity to testify at trial, and he informed this court that, after discussing the benefits and risks of testifying, he did not want to take the stand. (DE # 77 at 112-13.) Moreover, there is no indication that, had trial counsel requested that Peasley correct his report, Peasley would have changed his statement; at trial Peasley maintained that Miller confessed to having committed the robbery. Thus, Miller has not established that appellate counsel's failure to raise these arguments prejudiced his appeal.

### v.    Evidence of Intimidation

Miller claims that appellate counsel should have argued that trial counsel was ineffective because he failed to argue that there was insufficient evidence of intimidation to support a conviction under 18 U.S.C. § 2113(a), bank robbery by

intimidation. Miller argues that the Government failed to establish intimidation because Hoffman did not realize that a robbery was occurring until after it had concluded, and Tauber – who died prior to trial – did not testify.

"Intimidation exists when a bank robber's words and actions would cause an ordinary person to feel threatened, by giving rise to a reasonable fear that resistance or defiance will be met with force." *United States v. Gordon*, 642 F.3d 596, 598 (7th Cir. 2011). The Seventh Circuit has found that intimidation was established for purposes of § 2113(a) in cases that "share two critical facts: the defendant entered the bank and made a demand for money." *United States v. Thornton*, 539 F.3d 741, 749 (7th Cir. 2008). A defendant's mere demand for money that does not belong to him may rise to the level of intimidation. *Gordon*, 642 F.3d at 598 ("[A] demand note alone may contain an implicit threat that rises to the level of intimidation[.]"); *Thornton*, 539 F.3d at 749 (collecting cases); *United States v. Clark*, 227 F.3d 771, 775–76 (7th Cir. 2000) (intimidation element satisfied where defendant, acting in polite and non-violent manner, gave teller a note demanding money and stated "this is a hold-up").

Here, appellate counsel's performance was neither deficient nor prejudicial because the evidence against Miller established intimidation for purposes of the statute. The intimidation element of § 2113(a) is governed by an objective test: "would the defendant's acts cause an ordinary person to reasonably feel threatened?" *United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999). The Government did not need to prove that Tauber or Hoffman actually feared Miller; "the relevant inquiry is whether an ordinary

person in her position would have been afraid." *Id.* The evidence at trial established that Miller entered the bank and handed Tauber a note demanding money. He told Tauber, "You know exactly what this is" and instructed her, "Give me the hundreds as well." (DE # 75 at 117-118.) He kept one hand in his pocket while he interacted with Tauber. (*Id.* at 120.) This evidence was sufficient to find that a reasonable person in Tauber's place would have "understood that the demands were not mere requests which could be ignored, but rather, felt compelled to comply." *Thornton*, 539 F.3d at 748-49. Thus, there was sufficient evidence of intimidation to secure a conviction under § 2113(a). *See id.* (collecting cases).

### vi. Cumulative Effect of Alleged Errors

The court has considered the cumulative effective of all of the alleged errors and omitted evidence Miller alleges should have been identified on appeal. Even taken as a whole, Miller has not demonstrated that there is a substantial likelihood that the outcome of his appeal would have been different had appellate counsel raised these additional arguments. These arguments are not persuasive in light of the powerful evidence elicited against him at trial. Therefore, Miller has failed to establish that appellate counsel's actions prejudiced the outcome of his appeal.

### C. *Conditions of Supervision*

Miller contends that the conditions of his supervised release are unconstitutionally vague, and that his failure to raise this issue at sentencing or on appeal should be excused because he received ineffective assistance of counsel. If Miller

wishes to challenge the conditions of his supervised release, he may do so by filing a separate motion under 18 U.S.C. § 3583. He should address the issue of waiver in that motion.

       D.     *No Hearing Necessary*

Miller has requested an evidentiary hearing so that he may question his trial and appellate counsel. "The court should grant an evidentiary hearing on a § 2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (internal citations omitted). However, where a petitioner has failed to present facts necessary to substantiate his ineffective assistance claim, he cannot meet the threshold requirement for entitlement to an evidentiary hearing, and a district court may properly deny such a motion. *See Fuller v. United States,* 398 F.3d 644, 652 (7th Cir. 2005). Miller has not presented facts that, if proven, would entitled him to relief. Thus, Miller is not entitled to an evidentiary hearing.

       E.     *Motion for Discovery*

Miller has moved for the production of documents and copies of court records. (DE # 155.) He specifically asks for a copy of the final pretrial conference transcript (DE # 76), and a copy of all *Brady* and *Jencks* material that the Government tendered to trial counsel, documented at Docket Entry # 46. Miller argues that these documents will support his claim that certain FBI reports were improperly withheld, and that the FBI did not follow its internal protocol with respect to the enhancement of the surveillance

footage. (DE # 155 at 2.)[3]

"A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." R. Gov. Sec. 2255 Proc. 6(a). Good cause will be found where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal citation and quotation marks omitted). Here, Miller has not demonstrated good cause because even if the FBI failed to follow its internal procedures for the maintenance of the surveillance video, or the Government improperly withheld these reports, Miller would not be entitled to relief under § 2255. Therefore, his requests for the production of documents will be denied.

F.      *Certificate of Appealability*

Pursuant to § 2255 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. A court should issue such a certificate only if the movant has made a substantial showing of the denial of a constitutional right, that is, that reasonable jurists would find debatable whether the district court correctly resolved the issues or would conclude that those issues deserve further proceedings. 28 U.S.C. § 2255; 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003). The

---

[3] The court notes that, in a subsequent filing, Miller states that he received "all *Jencks* and *Brady* material and all other relevant information in his case file, related to the AM-Tech Surveillance video, CD's, and written discovery" in May 2018 from appellate counsel. (DE # 175 at 2.)

court thoroughly discussed the controlling case law on the issue at hand and finds that the conditions for the issuance of a certificate of appealability are not present in this case. Therefore no certificate will issue.

## IV.   CONCLUSION

For the foregoing reasons, the court:

(1)    **DENIES** Joseph Miller's motion to vacate under 28 U.S.C. § 2255 (DE # 144);

(2)    **GRANTS** Joseph Miller's application to proceed *in forma pauperis* (DE # 146);

(3)    **DENIES** Joseph Miller's motion for production of documents (DE # 155);

(4)    **GRANTS** Joseph Miller's motions to supplement (DE ## 157, 170);

(5)    **DENIES AS MOOT** Joseph Miller's motion for status (DE # 171);

(6)    **DENIES** Joseph Miller's motion to show cause (DE # 175); and

(7)    **DENIES** Joseph Miller a certificate of appealability.

**SO ORDERED.**

Date: October 21, 2019

     s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT